UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

KATHLEEN ANNE RUSSELL,

      Plaintiff

v.

HAVEN MEDICAL GROUP, LLC

      Defendant.

_____/

## COMPLAINT

Plaintiff, KATHLEEN ANNE RUSSELL, by and through her undersigned counsel, sues the Defendant, HAVEN MEDICAL GROUP, LLC, and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and to remedy violations of the rights of KATHLEEN ANNE RUSSELL under the Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, et seq, ("ADEA") and the Florida Civil Rights Act of 1992 ("FCRA") to redress injuries done to her by the Defendant, HAVEN MEDICAL GROUP, LLC.

2.     The unlawful acts which gave rise to this Complaint occurred within Putnam County, Florida during the term of Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3.     At all times material hereto, Plaintiff has been a citizen and resident of St. Johns County, Florida and is otherwise *sui juris*.

1

4.      As an individual over the age of 40, Plaintiff is a member of a protected class under the ADEA and the FCRA because the terms, conditions, and privileges of her employment were altered because of her age.

5.      Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6.      At all times material hereto, Defendant has employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the ADEA and FCRA.

7.      Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8.      Plaintiff's charge was filed within 300 days after the last instance of discrimination occurred.

9.      Plaintiff was issued a Notice of Right to Sue on August 30, 2023. This suit is filed in accordance with that Notice and within the applicable ninety-day time limitation (A copy of the Notice is attached hereto as Exhibit "A").

10.     All conditions precedent to the maintenance of this action by Plaintiff have occurred or have been waived.

11.     Plaintiff has retained the undersigned law firm as her legal counsel in connection with this action and is obligated to pay reasonable attorney's fees and all costs incurred in connection with this action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12.     Plaintiff began working for the Defendant in March 2012 as an Advanced Practice Registered Nurse. At the time of Plaintiff's unlawful termination, she was Lead Advanced Nurse Practitioner.

13.     As a Lead Advanced Nurse Practitioner, Plaintiff's primary duties were clinical responsibilities such as APRN rounding, home visits, symptom management, and mandatory Medicare face to face visits.

14.     At all times relevant hereto, Defendant regarded Plaintiff as an individual who was over 40 years of age. Specifically, the Plaintiff was 62 years old at the time of the unlawful termination.

15.     The Plaintiff was the oldest nurse practitioner working for the Defendant and the Plaintiff had been employed with Defendant the longest of the nurse practitioners.

16.     The Plaintiff loved her job, always strived to do her best, and received exemplary reviews. The Defendant even gave the Plaintiff a "star award." A star award is based on outstanding performance and going above and beyond one's duties.

17.     The Plaintiff is board certified as an Advanced Practice Registered Nurse in Hospice and Palliative Care. The Plaintiff has specialized in the areas of hospice and palliative care for more than 15 years. Prior to the Plaintiff changing her focus to hospice care, she also spent 25 years in a variety of registered nursing roles at several hospitals, served as a public health nurse, served as the onsite nurse at a prestigious private boarding school, and served as a childbirth educator and breastfeeding consultant.

18.     On February 17, 2022, Ms. Krystal Goodwin, Clinical Team Lead, along with care center staff, alerted the Plaintiff to a potential care center admission of a patient with a complex

case requiring a chest tube to be clamped (with an expected outcome of patient expiration in short order). The Plaintiff became involved in this situation because the designated provider on staff that was to perform this procedure, after extensive consultation with the patient care team, was called away unexpectedly due to a family emergency. Lacking any familiarity with the case and having never performed this particular procedure despite the Plaintiff's years of experience in hospice care, the Plaintiff immediately contacted her Chief Medical Officer, Dr. Shirley Codada, who was in her 50's, for background on the case and consultation regarding the requested procedure. Dr. Codada became the Chief Medical Officer for the Defendant in July 2021. Dr. Codada responded that she had talked about the situation and procedure ad nauseum and there was nothing more to explain.

19.     The Plaintiff pointed out to Dr. Codada that the Plaintiff had not been party to any of those prior discussions, as the Plaintiff was not the designated patient care provider. Dr. Codada responded dismissively that it was a simple procedure, that the respiratory therapist would be present to perform the actual clamping, and that the Plaintiff was to medicate the patient and provide general direction. She then told the Plaintiff to "just get it done" and then hung up on her. Dr. Codada did not treat the other, younger nurse practitioners in such a dismissive manner.

20.     Despite Dr. Codada's dismissive attitude, this was a situation the Plaintiff felt called for further dialogue, given that she had not previously performed this specific procedure. Though the Plaintiff had general awareness and understanding of chest tube maintenance, the Plaintiff was not aware of this procedure, nor was it a procedure she had ever known to be done by the providers for the Defendant. The Defendant never mandated that the Plaintiff perform this procedure and even the doctor that the Plaintiff usually partnered with had never ordered it for Plaintiff to perform.

21.     Subsequently, Heather, the nurse liaison from the hospital, notified the Plaintiff and Ms. Goodwin that the patient would not actually require the clamping procedure, as they were expected to expire shortly without need for the procedure.

22.     Ultimately, the patient arrived at the Defendant's facility much later than anticipated (after hours on February 17, 2022), with a chest tube attached to a Pleurovac, and with the patient's wife reiterating her expectation that the chest tube would be clamped.

23.     Given the changes in the patient's circumstances and status, the Plaintiff again contacted Dr. Codada for further consultation. Dr. Codada became irate and abusive and started yelling at the Plaintiff. The Plaintiff explained to her that the last thing the Plaintiff was told was that the patient did not need to be clamped. Dr. Codada continued to scream and berate the Plaintiff, claiming that Plaintiff lacked basic knowledge despite her years of experience and board certification in the field. The Plaintiff again explained her discomfort with performing this procedure, particularly given the continuing changes in the patient's situation. Dr. Codada condescendingly dismissed Plaintiff's concerns and said that since Plaintiff didn't know what she was doing that Dr. Codada would handle it herself.

24.     Later that same evening, Dr. Codada called the Plaintiff and apologized for her behavior. She said that she had a bad day, and nothing had gone right.

25.     The following morning, the Plaintiff reached out to Human Resources and Compliance to discuss Dr. Codada's behavior and to submit a complaint. The Plaintiff was very upset at how Dr. Codada screamed at her, and she felt she discriminated against the Plaintiff due to her age.  Plaintiff explained how Dr. Codada had treated her as inexperienced and unknowledgeable despite her training and experience. Dr. Codada's behavior towards Plaintiff was completely different from how Dr. Codada treated younger nurse practitioners employed with

Defendant. The Plaintiff spoke to Ms. Jennifer Blades (who was in her 40s), in Human Resources, who suggested a meeting on February 21, 2022.

26.    On February 21, 2022, the Plaintiff met with Ms. Blades and Ms. Jackie Price (in her 60s), Compliance Officer. The Plaintiff told them everything that occurred. In response, they directed the Plaintiff to write a formal complaint. They told the Plaintiff that they would send her the necessary paperwork for a formal complaint.

27.    When the Plaintiff still had not received the paperwork, she followed up and requested the paperwork that the Defendant previously said they would provide to her. After following up twice, they finally sent the Plaintiff the paperwork on February 25, 2022, and the Plaintiff submitted the formal complaint that same day.

28.    Before Plaintiff submitted her written complaint, on February 23, 2022, the Plaintiff received her year-end performance review from Dr. Codada. Dr. Codada gave Plaintiff a rating of "exceeds expectations" along with several complimentary comments, including: "you are knowledgeable and have great clinical skills. You are a team player; you take feedback well and you adjust quickly to changing situations."

29.    On February 28, 2022, the Plaintiff met with Dr. Codada, Ms. Blades, and Ms. Catina Hinson (in her 40s), Medical Practice Manager, to discuss the Plaintiff's complaint. Dr. Codada denied the accusations, suggested that the Plaintiff's complaint was actually filed as a response to Dr. Codada's prior complaint against the Plaintiff (which the Plaintiff was completely unaware of until that moment), and accused the Plaintiff of filing her complaint out of concern for protecting her job. Dr. Codada denied calling the Plaintiff to apologize for her behavior. The Plaintiff immediately provided Ms. Blades with a screenshot reflecting the phone call. Further, despite having just given Plaintiff an exemplary review a matter of days prior, Dr. Codada began

attacking the Plaintiff's qualifications – even going so far as to falsely claim that she didn't know what a chest tube was. Ms. Hinson suggested that everyone "cool off" and regroup at a later time.

30.     On March 4, 2022, having not heard anything, the Plaintiff reached out to Ms. Blades to find out if there had been any update or resolution relating to her complaint.

31.     On March 9, 2022, Ms. Blades responded that she was still working on the investigation.

32.     On March 10, 2022, the Defendant notified the Plaintiff that it had concluded its investigation into her complaint. The Defendant concluded that Dr. Codada did not do anything wrong and did not engage in any inappropriate conversations or discriminatory behavior. The Defendant accused the Plaintiff of disregarding her duties despite the fact that the clamping procedure was not in the Plaintiff's job description and had never been a part of her job duties.

33.     A matter of days later, on March 15, 2022, Ms. Price and Ms. Hinson terminated the Plaintiff's employment under the guise of her purported "alarming lack of knowledge" of the requisite skills for someone at her level. Specifically, they claimed that the Plaintiff did not know what a chest tube was and that she refused to be a part of the clamping procedure. Respondent has a policy that provides, "prior to termination of employment for failure to satisfactorily perform the duties of the employees' position, the employee should have received counseling as specified in Haven's disciplinary action policy" with an opportunity and time to address the purported performance issue. The Plaintiff had never received counseling for this alleged failure to perform her job duties. The Defendant terminated the Plaintiff only in retaliation for filing a complaint.

34.     Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF THE ADEA
### (Discrimination on the Basis of Age)

35.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 34, inclusive, as though same were fully re-written here.

36.    Because Plaintiff is an older woman the Defendant discriminated against the Plaintiff, and the Defendant refused to take any action to prevent the discrimination.

37.    Defendant does not treat younger, similarly situated employees in the same manner as Defendant treated Plaintiff.

38.    Upon information and belief, the Defendant does not demand that younger employees perform procedures that they are not comfortable with and are not mandated to perform as part of their job duties.

39.    Upon information and belief, the Defendant does not yell at younger employees or condescendingly question their knowledge and skills or accuse them of lacking basic knowledge for their positions.

40.    Defendant did not have a legitimate, non-discriminatory reason for demanding that the Plaintiff perform a procedure that she was not comfortable with and was not mandated to perform as part of her job duties.

41.    Defendant did not have a legitimate, non-discriminatory reason for yelling at the Plaintiff for expressing her concerns and ultimately questioning her knowledge and skills.

42.    Defendant had no good faith basis for discriminating against the Plaintiff by treating her differently than younger employees. Defendant based its actions on Plaintiff's age, and Plaintiff is entitled to liquidated damages based on these actions.

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the

ADEA; require that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate her for all lost wages and benefits, together with liquidated damages for Defendant's willful violation of the ADEA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Age)

43.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 34, inclusive, as though same were fully re-written here.

44.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against age discrimination under the Florida Civil Rights Act, Chapter 760, Fla. Stat.

45.     The discrimination to which Plaintiff was subjected was based on her age.

46.     Because Plaintiff is an older woman, the Defendant discriminated against the Plaintiff, and the Defendant refused to take any action to prevent the discrimination.

47.     Defendant does not treat younger, similarly situated employees in the same manner as Defendant treated Plaintiff.

48.     Upon information and belief, the Defendant does not demand that younger employees perform procedures that they are not comfortable with and are not mandated to perform as part of their job duties.

49.     Upon information and belief, the Defendant does not yell at younger employees or condescendingly question their knowledge and skills or accuse them of lacking basic knowledge for their positions..

50.    Defendant did not have a legitimate, non-discriminatory reason for demanding that the Plaintiff perform a procedure that she was not comfortable with and was not mandated to perform as part of her job duties.

51.    Defendant did not have a legitimate, non-discriminatory reason for yelling at the Plaintiff for expressing her concerns and ultimately questioning her skills and knowledge.

52.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by the Defendant.

53.    The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

54.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her being an older woman in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

55.    Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because of her age, in violation of the FCRA.

56.    Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's age. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her age.

57.    As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendant to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III: VIOLATION OF ADEA
### (Retaliation)

58.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 34, inclusive, as though same were fully re-written here.

59.     Because Plaintiff is an older woman, she was retaliated against by the Defendant for engaging in the protected activity of complaining of discrimination against her by *inter alia*, terminating the Plaintiff's employment.

60.     At all times relevant hereto, Defendant regarded Plaintiff as an individual who was over 40 years of age.

61.     Defendant is an employer as that term is defined under the ADEA.

62.     Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by *inter alia*, terminating the Plaintiff's employment.

63.     As a result of Defendant's violation, Plaintiff has suffered damages.

64.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and

11

suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against the Defendant by awarding general and compensatory damages and reinstatement, front pay and back pay, prejudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Retaliation)

65.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 34, inclusive, as though same were fully re-written here.

66.    Plaintiff had the right to voice her grievances after the Defendant discriminated against her.

67.    When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

68.    Dr. Codada, Ms. Price and Ms. Hinson, at all times relevant, were acting within the course and scope of their employment for Defendant.

69.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

70.    Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

71.      Plaintiff has engaged the undersigned attorney to prosecute her claim and is entitled

to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's

termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against

Defendant to compensate her for past and future pecuniary losses, including injury to her

professional reputation, and emotional pain and suffering caused by Defendant's forced relocation

in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-

judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as

permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys'

fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and

further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day of November 2023

By: *s/Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff